David J. Noonan, *Pro Hac Vice* (*MA Bar No. 373260)
**LAW OFFICE OF DAVID J. NOONAN**
32 Tanglewood Road
Amherst, Massachusetts, 01002
(413) 549-5491
noonan@law-djn.com

Gary N. Lento (028749)
**RADIX LAW**
15205 N. Kierland Blvd., Suite 200
Scottsdale, Arizona 85254
(602) 606-9300
lento@radixlaw.com

*Attorneys for Plaintiff FAVORITE HEALTHCARE STAFFING, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Favorite Healthcare Staffing, LLC, a Kansas limited liability company,<br><br>                Plaintiff,<br><br>vs.<br><br>IASIS Healthcare Holdings, Inc., St. Lukes Medical Center, L.P., and Mountain Vista Medical Center, L.P.,<br><br>                Corporate Defendants,<br><br>and<br><br>Ralph de la Torre; Michael Callum; and Christopher Dunleavy;<br><br>                Individual Defendants. | Case No.: 2:23-cv-01810-DJH<br><br>**PLAINTIFF'S MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES TO ENFORCE SETTLEMENT AGREEMENT**<br><br>(Assigned to the Honorable Diane J. Humetewa)<br><br><br>(*ORAL ARGUMENT REQUESTED*) |

///

**MOTION**

Plaintiff, Favorite Healthcare Staffing, LLC, d/b/a Favorite Healthcare ("Plaintiff" and/or "Favorite Healthcare"), hereby moves this Court for an order enforcing and implementing the settlement agreement it reached with all Defendants in this matter. This *Motion to Enforce* is based on this herein Motion, *Exhibits A through E* attached hereto, the *Memorandum in Support of this Motion* below, the pleadings on file herein, and any such oral or documentary evidence that may be presented at the hearing on this matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   Relevant Facts**

1. Plaintiff has filed a multi-count complaint in this civil action against Defendants IASIS Healthcare Holdings, St. Lukes Medical Center, L.P., Mountain Vista Medical Center, L.P., sometimes collectively referred to herein as "Corporate Defendants;" and Defendants, Ralph de la Torre, Michael Callum, and Christopher Dunleavy, sometimes collectively referred to herein as "Individual Defendants."

2. Pursuant to Paragraph 9 of this Court's *Rule 16 Scheduling Order* (Doc. 22), the parties engaged in detailed settlement discussions by phone conference on February 16, 2024.[1] The conference lasted in excess of 30 minutes and upon the conclusion of said conference, Plaintiff's counsel reduced to writing the settlement offered by Plaintiff during the settlement conference. A copy of said settlement offer is attached hereto as **Exhibit A**. ("Plaintiff's First Settlement Offer").

3. Five days later on February 21, 2024, all Defendants, by and through their counsel, responded to Plaintiff's First Settlement Offer and accepted "all of the terms you propose," except all Defendants sought an additional 15 days within which to make the agreed to settlement payment to Plaintiff. Attached hereto as **Exhibit B** is Defendants' Counteroffer.

---

[1] At the time of the settlement discussion, Plaintiff had previously served requests for production of documents on several of the defendants and had scheduled depositions for three of the defendants, all of this discovery was postponed as a result of the settlement discussions.

4. On February 21, 2024, Plaintiff responded to Defendants' Counteroffer by accepting Defendants' request for an additional 15 days within which to make the settlement payment, but only if Defendants would enter into a consent judgment in the full amount prayed for and that said consent judgment would be "pocketed" and not filed unless Defendants failed to perform as agreed. A copy of Plaintiff's response to Defendants' Counteroffer is attached hereto as **Exhibit C**.

5. On February 28, 2024, all Defendants, through email by Defendants' counsel accepted the counteroffer settlement terms proposed by Plaintiff as set forth in **Exhibit C**. Defendants' acceptance of these terms are contained on the top of **Exhibit C** and specifically states "David, I can confirm the settlement terms below to be set forth in standard and reasonable language in the settlement." ("Settlement Agreement").

6. In light of the Defendants' acceptance of the terms in the Settlement Agreement, Plaintiff immediately drafted a Release and Settlement Agreement, Stipulation to Entry of Judgment, and the Stipulated Consent Judgment ("Settlement Documents"). As requested by Defendants' counsel, the Settlement Documents contained "standard and reasonable language" and contained all of the essential substantive agreements of the parties concerning: the amount to be paid, the date payment was due, the execution of a stipulated consent to judgment for all, not just some of the Defendants, and the conditional escrow of the Stipulated Consent Judgment.[2] These Settlement Documents were forwarded to Defendants' counsel on March 1, 2024. Copies of the Settlement Documents forwarded to Defendants' counsel are attached hereto as **Exhibit D**.

7. On March 3, 2024, Defendants' counsel acknowledged the receipt of the Settlement Documents and acknowledged they were reviewing the same. Shortly thereafter Defendants' counsel, by phone call, reported it was too difficult to get all the necessary signatures from all the Defendants and requested an edit allowing only one person to endorse on behalf of all Defendants. Plaintiff responded by consenting to the request as long as there

---

[2] *See* page 4 of the Release and Settlement Agreement attached hereto as **Exhibit D**.

was a representation by counsel that the signatory had authority to execute for each Defendant.

8. Defendants ultimately provided redlined edits to the Settlement Documents, most of which were cosmetic, but the primary substantive edit was to eliminate the Individual Defendants from executing the Stipulated Consent Judgment against themselves. When Defendants' counsel suggested this change, he <u>did not</u> claim that the Individual Defendants had not agreed that they would consent to judgment.

9. In an attempt to avoid litigation to enforce the Settlement Agreement, and still maintain the essential agreed to settlement provision that the Individual Defendants could ultimately become liable in the event of nonperformance, Plaintiff proposed an edit to the Settlement Documents. The proposed edit would not require the Individual Defendants to initially execute the Stipulated Consent Judgment but would still ultimately have the Individual Defendants subject to the Stipulated Consent Judgment if the settlement payment was not timely made. This proposed edit was consistent with the Settlement Agreement that <u>all</u> Defendants would be joint and severally liable for the full amount prayed for in Plaintiff's complaint if the agreed performance was not rendered to Plaintiff.

10. At no time since February 21, 2024, or February 28, 2024, when Defendants agreed to the Settlement Agreement, the terms of which required all Defendants to be conditionally bound by a Stipulated Consent Judgment, have the Defendants ever asserted that they did not agree to have all Defendants, not just the Corporate Defendants, be bound to a conditional Consent to Judgment. The Defendants' only comments have been that there were delays in executing the Settlement Documents due to vacations, and most recently on March 25, 2024, that Defendants were working on "expediting this payment," another admission of a Settlement Agreement. Attached as ***Exhibit E*** are copies of correspondence with Defendants' counsel confirming the representations contained in this paragraph.

11. Prior to filing the motion herein, Plaintiff, on March 18, 22 and 25, 2024, communicated to Defendants' counsel that a Motion to Enforce Settlement Agreement would have to be filed if Defendants would not comply with the Settlement Agreement. Plaintiff's

counsel has received no response to these entreaties.

**II.      Defendants Have Failed to Comply with the Terms of the Settlement Agreement**

As shown above, the Defendants have entered into a Settlement Agreement. After agreeing to the Settlement Agreement, the Defendants, without any justification, have refused to perform in accordance with the terms of the Settlement Agreement. They have not paid the agreement settlement amount. Nor have the Defendants executed the Settlement Documents. Accordingly, Plaintiff has been forced to bring this Motion to Enforce Settlement Agreement.

**III.     Arizona Law Governs the Contract Between the Parties and Enforcement of the Settlement Agreement**

The contract at the heart of this matter was drafted by the Defendants. It did not select the choice of law. *See* Amended Complaint, Exhibit A. Where a contract does not specify a choice of law, Arizona law applies the test of the Restatement (Second) of Conflicts of Laws § 188 (1971). *See Delta Mech., Inc. v. Garden City Grp., Inc.*, No. 2:06-CV-1095 JWS, 2008 WL 11342244 at *3 (D. Ariz. July 8, 2008); *Labertew v. Chartis Prop. Cas. Co.*, 363 F. Supp. 3d 1031 (D. Ariz. 2019).

In federal diversity cases, such as the here, an Arizona district court must apply the choice-of-law rules of the state of Arizona. *See Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000). Under the Restatement, the court shall apply the laws of the state which has the "most significant relationship to the transaction and the parties." Restatement (Second) of Conflict of Laws ("RCL"), § 188(1) (1971).

Arizona has the most significant relationship to the transaction which is the subject matter of this civil action because:

1. Defendants St. Luke's Medical Center, LP, and Mountain Vista Medical Center LP, are registered to conduct business in Arizona, and only conduct their businesses in the cities of Florence and Mesa, Arizona; and
2. Plaintiff rendered all of its services to the Defendants' patients in Florence and Mesa, Arizona, so that the only place of performance was in Arizona; and

3.  A customer development employee from Plaintiff began and concluded the contract negotiation process in Plaintiff's Tucson, Arizona, office as a result the negotiation of the contract occurred in Arizona; and

4.  Defendants accepted Plaintiff's services in Florence and Mesa Arizona.

The place of performance is the state where the contracted performance is to occur. *See* Comment on RCL, § 188(2); *Labertew v. Chartis Prop. Cas. Co.*, 363 F. Supp. 3d 1031, 1038 (D. Ariz. 2019) (performance was in Arizona because that is where employment contracts occurred). This includes a party's acceptance of contracted goods or services. *See Cavan v. Maron*, 182 F. Supp. 3d 954, 960 (D. Ariz. 2016). If the place of negotiation and the place of performance are within the same state, the law of that state is likely to apply. *See* RCL § 188(3).

All the above facts and law strongly argue for the application of Arizona law to this dispute and the negotiated resolution of this dispute.

**IV.    The Settlement Agreement Is Fully Enforceable**

The binding nature and enforceability of settlement agreements in Arizona are governed by general contract principles. *See Emmons v. Superior Ct. In & For Cnty. of Maricopa*, 192 Ariz. 509, 512 (Ct. App. 1998). Before a binding agreement can form, the parties must mutually agree to all material terms. *See Hill-Shafer P'ship v. Chilson Family Tr.*, 165 Ariz. 469, 473 (1990).

A brief email acceptance which precedes a more detailed agreement is binding so long as there is a meeting of the minds on all material terms. *See ibid.; see also Arizona Custom Contracting, Inc. v. Green*, No. 2 CA-CV 2019-0108, 2020 WL 2787583 at *2-3 (Ariz. Ct. App. May 29, 2020). Therefore, acceptance by email, as is present in this case, is binding unless there is reasonable uncertainty in the contractual terms. *See Hill-Shafer*, *supra*, 165 Ariz. at 474; *Johnson Int'l, Inc. v. City of Phoenix*, 192 Ariz. 466, 470 (Ct. App. 1998) ("A contract may be formed, even if not formally executed, if it is clear the parties intended to bind themselves to the terms"). The court may look at the "surrounding circumstances and

the conduct of the parties" to determine whether they shared the same understanding of the contractual terms. *Johnson Int'l*, *supra*, 192 Ariz. at 470; *Arizona Custom Contracting*, *supra*, 2020 WL 2787583 at *4 (finding agreement was not binding where parties' communications revealed they were confused about who was paying who).

Here, the email exchanges amongst and between counsel confirmed the essential terms of the settlement agreement in clear and unambiguous terms. The emails of February 21 and February 28, 2024, both captured in **Exhibit C** hereto, contained all of the essential substantive agreements of the parties' settlement agreement, namely: (1) the amount to be paid, (2) the date payment was due, (3) the execution of a Stipulated Consent To Judgment by all the Defendants, and (4) the conditional escrow of the Stipulated Consent Judgment unless the settlement performances did not occur. The Settlement Documents drafted and forwarded to Defendants' counsel on March 1, 2024, "contained standard and reasonable language" and accurately included the essential terms of the settlement.

Perhaps the most convincing fact confirming the existence of the settlement agreement is that at no time since February 21, 2024, or February 28, 2024, when the Settlement Agreement terms were agreed to, have the Defendants ever asserted that they did not agree to the terms in **Exhibit C** hereto. More persuasive is the fact that the Defendants have never asserted that they did not agree to have the Individual Defendants, not just the Corporate Defendants, to be bound to the conditional Consent to Judgment. The Defendants only comments have been there were delays in executing the Settlement Documents due to vacations, and most recently on March 25, 2024, that Defendants were working on "expediting this payment," which is another admission of a Settlement Agreement. *See* **Exhibit E** hereto.

The email acceptances of Defendants' counsel are binding because their two correspondences demonstrate an understanding of the core terms and an intent to be bound. *See Hill-Shafer*, *supra*, 165 Ariz. at 473-74; *Johnson Int'l*, *supra*, 192 Ariz. at 470.

PLAINTIFF'S MOTION AND MEMO OF P&As TO ENFORCE SETTLMENT AGREEMENT
7
1582802.1

Since there are no material terms left unaddressed in the email exchanges, the settlement agreement is binding.

### V.     Defendants Statements Can Be Used to Enforce the Settlement Agreement

Rule 408 of the Arizona Rules of Evidence prohibits use of a settlement offer or the conduct and statements surrounding that offer "either to prove or disprove the validity or amount of a disputed claim or to impeach … a prior inconsistent statement or a contradiction[.]" Ariz. R. Evid. 408(a). However, an offer or negotiating statements may be admitted for another purpose. *Id*. at 408(b). The associated Federal Rule of Evidence contains the same language. *See* Fed. R. Evid. 408.

While Rule 408 prohibits use of settlement negotiations to prove the validity of a claim, it does not prohibit their use to prove the validity of a settlement agreement itself. *See* Ariz. R. Evid. 408(a); Fed. R. Evid. 408(a). Evidence of a settlement may be admitted if it does not seek to prove the validity of the underlying claim, but rather the presence of an agreement. *See* Ariz. R. Evid. 408(b); Fed. R. Evid. 408(b).

The admissibility of settlement-related evidence for other purposes falls within the discretion of the court. *See Id*. This is the rule in both Arizona state courts and federal courts. *See John C. Lincoln Hosp. & Health Corp. v. Maricopa Cnty.*, 208 Ariz. 532, 538, fn. 3 (Ct. App. 2004), as amended (Sept. 1, 2004); *Callie v. Near*, 829 F.2d 888, 890-92 (9th Cir. 1987) (holding lower court erred in failing to hold evidentiary hearing on parties' intent to be bound using settlement negotiation evidence); *Moshir v. Automobili Lamborghini Am. LLC*, 927 F. Supp. 2d 789 (D. Ariz. 2013) (allowing admission of settlement negotiations where evidence related to a party's conduct during negotiations rather than the underlying claim).

This reading is supported by the Federal Advisory Committee's notes on Rule 408, which state that the purpose of Rule 408 is "promotion of the public policy favoring the compromise and settlement of disputes." *See* Fed. R. Evid. 408, Advisory Committee's note to 1972 proposed rule. Rule 408 is intended to promote settlement negotiations by preventing them from being used against either party in resolving the underlying claim. However, if the

rule also applied to exclude evidence of settlement negotiations to prove that there is a binding settlement agreement, it would not serve the purpose of promoting settlements. *See Id*.

The relevance and helpfulness of a piece of settlement-related evidence to resolving the issue at question is influential in whether a court will permit its admission. *See Cnty. of Maricopa v. Off. Depot Inc.*, No. CV-14-01372-PHX-DWL, 2019 WL 5066808 at *10 (D. Ariz. Oct. 9, 2019). Here, the email exchanges contained in **Exhibit C** specifically establish the terms of the settlement agreement and all Defendants' acceptance of those terms. Those email exchanges are of significant importance in determining the binding nature of the agreement. *See Johnson Int'l, Inc. v. City of Phoenix*, 192 Ariz. 466, 470 (Ct. App. 1998); *Arizona Custom Contracting, Inc. v. Green*, No. 2 CA-CV 2019-0108, 2020 WL 2787583 at *4 (Ariz. Ct. App. May 29, 2020). Therefore, discussions and negotiations surrounding a settlement agreement which are relevant to demonstrate its binding nature are admissible under Ariz. R. Evid. 408 and Fed. R. Evid. 408. As a result, Defendants' counsel's February 28, 2024, email accepting the terms of the Settlement Agreement is admissible and proof of a binding settlement agreement.

## VI.    **Conclusion**

The strong public policy of encouraging negotiation and resolution of disputes is embodied in countless cases and in relevant procedural rules, including Ariz. R. Evid. 408 and Fed. R. Evid. 408. In the present case there is no dispute as to what was agreed. There are no ambiguities. And there are simply no questions as to what each party was supposed to do. A meeting of the minds was confirmed in unambiguous language, a contract was formed, and Plaintiff has the right to specifically enforce that contract, the Settlement Agreement.

Plaintiff respectfully requests this Court to issue an Order specifically enforcing the terms and conditions of the Parties' Settlement Agreement as they are established in **Exhibit C**, as follows:

/ / /

/ / /

1. Defendants execute and tender to Plaintiff the Release and Settlement Agreement, the Stipulation and Consent to Entry of Judgment, and the Stipulated Consent Judgment, all attached as **Exhibit D** ("Executed Settlement Documents"); and

2. Plaintiff to hold in escrow the Executed Settlement Documents for a period of 45 days pending Defendants' payment of $186,421 ("Settlement Payment") to Plaintiff; and

3. If Defendants do not timely tender said Settlement Payment to Plaintiff, Plaintiff may release from escrow the Settlement Documents, file with this Court the Stipulation and Consent to Entry of Judgment and the Stipulated Consent Judgment and fully exercise its rights as a judgment creditor as against of all of the Defendants; and

4. However, should Defendants timely tender the Settlement Payment to Plaintiff, the Release and Settlement Agreement may be released from escrow and the terms and conditions of said Release and Settlement Agreement will be deemed effective and may be relied upon by the Parties.

5. For any such other and further relief as this Court deems just and proper.

DATED:     April 5, 2024        **LAW OFFICE OF DAVID J. NOONAN**

*/s/ David J. Noonan*
David J. Noonan, Esq. (Pro Hac Vice)
32 Tanglewood Road
Amherst, Massachusetts, 01002
noonan@law-djn.com

*Attorneys for Plaintiff FAVORITE HEALTHCARE STAFFING, LLC*

**RADIX LAW**
Gary N. Lento, Esq.
15205 N. Kierland Blvd., Suite 200
Scottsdale, Arizona 85254
(602) 606-9300
lento@radixlaw.com

*Local Counsel for Plaintiff FAVORITE HEALTHCARE STAFFING, LLC*

# CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2024, the foregoing document and any attachments were emailed to the participants as listed below.

Brendan A. Melander
Brandon Stein
**HUSCH BLACKWELL LLP**
2415 E. Camelback Road, Suite 500
Phoenix, AZ 85016
Brendan.Melander@huschblackwell.com
Brandon.Stein@huschblackwell.com

Matthew D. Knepper *(Pro Hac Vice)*
Theresa M. Mullineaux *(Pro Hac Vice)*
**HUSCH BLACKWELL LLP**
8001 Forsyth Blvd., Suite 1500
St. Louis, MO 63105
Matthew.Knepper@huschblackwell.com
Theresa.Mullineaux@huschblackwell.com
*Attorneys for Defendants*

By: */s/ Gary N. Lento*
Gary N. Lento